J-S40033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.B.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 585 EDA 2018 |

Appeal from the Order February 14, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-002518-2016,
CP-51-AP-0001097-2017, CP-51-DP-0002642-2016

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 24, 2018**

R.B.H. (Mother) appeals from the order, entered in the Court of Common Pleas of Philadelphia, changing the placement goal to adoption and involuntarily terminating her parental rights to her minor daughter, A.H. (Child) (born 1/14).  After careful review, we affirm.

On November 16, 2016, the Philadelphia Department of Human Services (DHS) received a report alleging that Mother, Father[1] and Child were squatting in a home located at 3863 N. 19th Street and that the home contained a strong odor of marijuana.  The report also alleged that Mother used drugs in the presence of Child and that Mother and Father had often left Child in the care of her maternal grandfather (Grandfather).  The report claimed that on

_____

[1] Father's rights were terminated at a prior court proceeding.  He is not a party to this appeal.

_____

*   Retired Senior Judge assigned to the Superior Court.

another occasion Mother tried to remove Child from Grandfather's home, threatening to damage the house and Grandfather's other property, and that on another occasion Mother assaulted Grandfather in the presence of Child. Finally, the report noted that Mother and Father have domestic issues.

On December 7, 2016, Child was adjudicated dependent and placed in the custody of DHS. Child was put in kinship care with Grandfather, where she remains to date. Grandfather is an adoptive resource. The court referred Mother to domestic violence counseling, housing assistance and parenting education classes. The court issued a stay-away order against Mother and Father with respect to Grandfather's home, as it was alleged in the order that parents' conduct places Child at risk. Mother was also ordered not to have any contact with Child's daycare.[2] Parents were, however, afforded weekly, supervised, line-of-sight visits with Child at DHS, provided the visits were confirmed 24-hours in advance.

At a Single Case Plan (SCP) meeting held on December 19, 2016, the following parental objectives were established for Mother: (1) weekly, supervised, line-of-sight visits with Child; (2) correct or stabilize health and sign all necessary consent forms; (3) comply with all court orders, service plans, and recommendations; (4) comply with stay-away order in regard to

---

[2] The application for the stay-away order states that Mother arrived at Child's daycare under the influence of an unknown substance and attempted to take Child out of daycare. The application also characterizes Mother's behavior as "erratic and [that she] appears to be volatile." Stay Away Order, 11/28/16, at 2.

Grandfather and Child's daycare; (5) attend parenting education and housing service programs; (6) arrange to receive domestic violence counseling; (7) advise the Community Umbrella Agency (CUA) when Mother moves and provide the CUA with any new address; (8) achieve and maintain recovery from drug and alcohol issues; (9) attend the Clinical Evaluation Unit (CEU) for drug and alcohol assessments and follow recommendations; (10) complete three random drug screens; and (11) sign all necessary consent forms for Child. In January 2017, Mother completed her CEU assessment and was referred to attend intensive outpatient treatment. At a March 2017 permanency hearing, the court ordered supervised, line-of-sight visits with Child continue at DHS.

On July 28, 2017, Mother and Father arrived two hours late for their visit with Child; an altercation ensued among Mother, Father and Grandfather. As a result of the altercation, Mother was arrested the following day and charged with contempt for violating a court order, conspiracy, possessing an instrument of crime, and simple assault. Another stay-away order was issued against Mother to protect Grandfather; as a result, Mother could not visit with Child. In August 2017, Mother and Father's supervised visits were reinstated and relocated to DHS. Over the following months, Mother failed to attend several court-ordered random drug screens.[3]

_____

[3] Mother also tested positive for marijuana once in November 2016 and two times in January 2017.

On November 8, 2017, DHS filed a petition to involuntarily terminate Mother's parental rights. On December 15, 2017, the court-ordered goal was changed from reunification to adoption. On February 14, 2018, the trial court held a termination hearing at which Mother, Grandfather, and social agency workers testified. After the hearing, the court entered the instant order changing the goal to adoption and terminating Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[4] Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She presents the following issues for our review:

> (1)  Did the trial court err when it found that [DHS] had met its burden by clear and convincing evidence to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1)?
>
> (2)  Did the trial court err when it found that the Department of Human Services (DHS) had met its burden by clear and convincing evidence to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), § 2511(a)(5), § 2511(a)(8), § 2511(b).

Mother's Brief, at 5.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well

---

[4] 23 Pa.C.S. §§ 2101-2910.

- 4 -

established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under section 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in section 2511(b)).

Mother argues that the court erred in terminating her parental rights under section 2511(a) where she was substantially compliant in attending her weekly, supervised visitation with Child.

Instantly, at the time of the termination hearing, Child had been in placement for fourteen months. Over the course of one year of visitation, Mother missed only six visits with Child. During that same time, however, Mother failed to accomplish any of her parental objectives. Specifically, Mother had not yet enrolled in a substance abuse treatment program, completed a parenting program, engaged in a domestic violence program, or obtained suitable housing. Mother's complete failure to fulfill her parental objectives demonstrates her settled purpose of relinquishing a parental claim to Child, as well as an abdication of her parental duties. Thus, the evidence

presented at the termination hearing demonstrates that termination[5] was proper under section 2511(a)(1).[6]

Mother also contends that termination was improper under section 2511(b) where she and Child are bonded.

It is well-established that the mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." ***In re Adoption T.B.B.***, 835 A.2d 387, 397 (Pa. Super. 2003). ***See In re: C.L.G***., 956 A.2d 999 (Pa. Super. 2008) (proper inquiry is whether parent-child bond indicates beneficial relationship that should be preserved; termination proper where child's bond with foster parents stronger than with mother); ***see also In the Interest of K.Z.S***., 946 A.2d 753, 764 (Pa. Super. 2008) (real question is whether parent-child bond is worth saving and whether it can be severed without irreparable harm to child).

---

[5] We can affirm the trial court's decision regarding the termination of parental rights with regard to any singular subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

[6] Pursuant to section 2511(a)(2), the rights of a parent in regard to a child may be terminated, after a petition has been filed, if:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(2).

In the instant matter, Child's CUA case manager testified that although Child enjoyed her visits with Mother, Child was truly bonded to Grandfather, her kinship care provider who met Child's daily needs. The case manager testified that she did not believe Child would suffer irreparable harm if Mother's parental rights to Child were terminated and that termination would be in Child's best interests.

Finding the CUA case manager's testimony credible, the trial court properly concluded that DHS met its burden of proving by clear and convincing evidence that termination was proper under section 2511(b). Here, there is no dispute that Child has been thriving while in her Grandfather's care for the past fourteen months. Moreover, he is an adoptive resource for Child. He is a source of love, stability, safety and permanency in Child's life. ***See In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (other factors to be considered in a section 2511(b) best-interest analysis include "intangibles such as love, comfort, security and stability[.]").

Order affirmed.

Platt, J., joins the memorandum.

Dubow, J., did not participate in the consideration or decision of this memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/18